**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIAN S. KEENER** | : |
| **17 Greenbriar Drive** | : |
| **Jacobus, PA        17407** | : CIVIL ACTION |
| **Plaintiff,** | : NO. |
| **v.** | : |
| | : |
| **BRIAN M. TORKAR, Individually, and In His** | : |
| **Capacity as a Pennsylvania State Trooper** | : |
| **Corporal, c/o Pennsylvania State Police-York** | : |
| **R.R. 2, 110 North Street** | : |
| **York, PA 17403,** | : |
| **and** | : |
| **SEAN TAYLOR, Individually, and In His** | : |
| **Capacity as a Pennsylvania State Trooper,** | : |
| **c/o Pennsylvania State Police-York** | : |
| **R.R. 2, 110 North Street** | : |
| **York, PA 17403,** | : |
| **Defendants.** | : |

**COMPLAINT**

Plaintiff, **BRIAN S. KEENER,** (hereinafter referenced as "**Plaintiff**" as context dictates), by and through his undersigned counsel, Jeffrey R. Lessin & Associates, P.C., files this Complaint and sues Defendants, **BRIAN M. TORKAR, Individually, and In His Capacity as a Pennsylvania State Trooper Corporal** (hereinafter "**TORKAR**")**,** and **SEAN TAYLOR, Individually, and In His Capacity as a Pennsylvania State Trooper** (hereinafter "**TAYLOR**")**,** and alleges as follows:

**INTRODUCTION**

1.      This is an action at law for damages sustained by a citizen of the United States against individuals, police officers/troopers of the Pennsylvania State Police.

2.      On Sunday, August 31, 2008, at approximately 1:30 am, **Plaintiff** was violently attacked inside York Hospital, located at 1001 South George Street, in the City

and County of York, by a police officer/corporal, namely, Defendant **TORKAR**, individually and acting in his capacity as Pennsylvania State Trooper Corporal. At all times relevant to this cause of action, Defendant **TAYLOR** assisted Defendant **TORKAR** in violating **Plaintiff**'s rights, and later engaged in an attempted cover-up of Defendant **TORKAR**'s gross misconduct. In addition, both Defendants used excessive force on **Plaintiff** after he was arrested. Further, at all times relevant hereto, the aforementioned **TORKAR** and **TAYLOR** were acting in their capacity as law officers and employees of the Pennsylvania State Police, and were acting under color of state law by virtue thereof.

3.      On or about said date at approximately 1:00am, **Plaintiff**, while operating his vehicle, was pulled over by Defendant **TORKAR** for allegedly making a left turn from South George Street onto East College Avenue in York, Pennsylvania without using turn signals.

4.      Before being pulled over by Defendant **TORKAR** for allegedly making a left turn without a using turn signal, **Plaintiff** was at a bar called Club XS, at 36 West 11th Avenue, in York, Pennsylvania, a known gay bar, where he consumed one (1) beer. The fact that **Plaintiff** only had one (1) beer prior to his encounter with Defendant **TORKAR** and was not intoxicated was confirmed by the blood alcohol analysis done on **Plaintiff**'s blood at York Hospital**.**

5.      After **Plaintiff** left Club XS, he was followed for several miles by the police cruiser operated by Defendant **TORKAR** before Defendant **TORKAR** pulled **Plaintiff** over for allegedly making a left turn without using a turn signal.

6.      After Defendant **TORKAR** stopped **Plaintiff** for allegedly making a left turn without using turn signals, Defendant **TORKAR** requested **Plaintiff** to perform a field

2

sobriety test, which Plaintiff successfully performed, since he was not intoxicated, although Defendant **TORKAR** claimed that **Plaintiff** failed said field sobriety test.

7.      After Defendant **TORKAR** claimed that **Plaintiff** failed said field sobriety test, Defendant **TORKAR** hand-cuffed Plaintiff outside his vehicle, and arrested **Plaintiff** for driving under the influence of alcohol, despite the fact that **Plaintiff** did not exhibit the indicia of intoxication, and had only consumed one (1) beer at any time relevant to this case.

8.      Defendant **TORKAR** arrested **Plaintiff** and placed him in the back of the police cruiser.

9.      Defendant **TORKAR** took the hand-cuffed **Plaintiff** to York Hospital in order to obtain a blood sample for blood alcohol testing.

10.      During the ride to the hospital, Defendant **TORKAR** and **Plaintiff** had no conversation, although Defendant **TORKAR** has misrepresented that **Plaintiff** stated that if he refused to consent to blood testing, Defendant **TORKAR** wouldn't have proof that **Plaintiff** was "drunk and high."  **Plaintiff** never said that to Defendant **TORKAR** and **Plaintiff** was not "drunk and high" at any time relevant to this matter.  To the contrary, the analysis done on **Plaintiff**'s blood at York Hospital showed that **Plaintiff** was not intoxicated at any time relevant to this matter**.**

11.      When Defendant **TORKAR** brought **Plaintiff** to York Hospital in order to obtain a blood sample for blood alcohol testing, **Plaintiff** was indecisive about whether to consent to blood testing.

12.      At York Hospital, after changing his mind several times about whether to

allow the phlebotomist to take blood for testing, **Plaintiff** refused to allow his blood to be drawn.

13.     Angered at **Plaintiff's** indecision, and/or refusal to submit a blood sample, Defendant **TORKAR** pulled **Plaintiff** from the seat in the phlebotomist's room, clubbed and rehand-cuffed **Plaintiff** and proceeded to club and beat Plaintiff mercilessly, causing the serious injuries discussed herein.

14.     **Plaintiff** was repeatedly struck in the face with a baton by Defendant **TORKAR** before **Plaintiff** was hand-cuffed, and repeatedly punched and kicked by Defendant **TORKAR** after **Plaintiff** was hand-cuffed.  In addition, after **Plaintiff** was hand-cuffed, Defendant **TORKAR** tased **Plaintiff**.

15.     In addition, after **Plaintiff** was hand-cuffed, Defendant **TAYLOR** physically assaulted **Plaintiff**, punched, kicked and tased **Plaintiff**.

16.     The attack upon Plaintiff by Defendant **TORKAR**, and later, Defendant **TAYLOR**, caused great, serious and permanent injuries to **Plaintiff**, as discussed herein.

17.     The use of a taser, including the use of a taser on a hand-cuffed suspect, is considered deadly force along the use of force continuum.  The use of the taser on Plaintiff caused **Plaintiff** to defecate in his pants, and he was not allowed to clean up for approximately twelve (12) hours.

18.     Defendants **TORKAR** and  **TAYLOR** beat the **Plaintiff** mercilessly, and then entered into a conspiracy to prosecute **Plaintiff** for certain crimes which both Defendants **TORKAR** and  **TAYLOR** knew **Plaintiff** did not commit.  Before Plaintiff's arraignment, Defendants taunted **Plaintiff** by threatening to send him to state prison where he would

4

be "fucked."

19.     During the aforesaid beating, and later, Defendant **TORKAR** repeatedly called **Plaintiff** "faggot" and "queer", evincing his evil intent to deprive **Plaintiff** of his civil rights due to Defendant **TORKAR**'s prejudice against and hatred of men he perceives as homosexual.

20.     **Plaintiff** had done nothing to provoke such an attack by Defendant **TORKAR**, and later, Defendant **TAYLOR**.

21.     Said Defendant **TORKAR** beat **Plaintiff** relentlessly and mercilessly, including while he was hand-cuffed, hitting him in the head, mouth, face and body with baton, fist, foot, and taser gun and ramming his head and body into the walking surface, causing wounds, broken bones, broken teeth and/or required dental work, contusions, lacerations and/or bruises to his face and requiring medical attention, and dental work. Said outrageous conduct by Defendants was an egregious and unconstitutional excessive use of force.

22.     By reason of the aforesaid wrongful conduct of the Defendants as hereinbefore alleged, the **Plaintiff** suffered severe and permanent injuries to his body, including, but not limited to the following: fracture of the medial wall of the left orbit, non-displaced fracture of the floor of the left orbit fracture of the frontal processes of the bilateral maxillary bones, non-displaced fracture of the medial wall of the left maxillary sinus, air fluid level within left maxillary sinus, mucosal thickening and/or hemorrhage in bilateral ethmoid sinuses, mucosal thickening obstructing right maxillary sinus ostium, nasal septal deviation, left eye proptosis, left eyelid ecchymosis, lacerated left eyebrow, significant subconjunctival hemorrhage to the left eye, possible post-traumatic glaucoma

to the left eye, low intraocular pressure in the left eye, facial trauma, extensive left-sided facial soft tissue swelling and bruising, stranding of left intraorbital and retroconal fat consistent with severe contusion, rib contusions, neck pain and damage, low back pain and injury, sciatic nerve pain and injury, TMJ pain and disorder, hernia, tinnitus, damage to teeth requiring root canals, post-traumatic stress disorder, nervous shock and aggravation and/or exacerbation of all known and unknown preexisting medical conditions. **Plaintiff** suffered internal injuries of an unknown nature; he suffered severe aches pains, mental anxiety and anguish, and a severe shock to his entire nervous system, and other injuries the full extent of which may not yet be known. He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual duties and occupation, all to his great financial detriment and loss. **Plaintiff** believes and therefore avers that his injuries are serious and permanent in nature.

23.    Said Defendants intentionally inflicted said serious injuries upon **Plaintiff**, and said Defendants intentionally entered into a conspiracy to deprive **Plaintiff** of his civil rights and also to falsify charges against **Plaintiff** in a malicious attempt to cover up and/or justify the gross violation of **Plaintiff**'s civil rights.

24.    Although **Plaintiff** was beaten for refusing to allow testing of his blood, his blood was taken at York Hospital after he was mercilessly beaten, and the results of his blood test showed that he was not intoxicated.

25.    By this complaint, **Plaintiff** seeks judicial redress for violation of his civil rights, due to the egregious, outrageous and unconstitutional use of excessive force by

6

Defendants.

26.     **Plaintiff** brings this claim pursuant to 42 U.S.C. Sec. 1983 seeking monetary relief for violation of the Fourteenth Amendment to the Constitution of the United States. **Plaintiff** also seeks damages under Pennsylvania tort law.

## JURISDICTION AND VENUE

27.     The jurisdiction of this Court is invoked under 28 U.S.C. Sec. 1331, 1343 and 1367, this being an action authorized by law to redress the deprivation under color of Pennsylvania law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to **Plaintiff** by the Fourteenth Amendment to the Constitution of the United States.

28.     The matter in controversy exceeds, exclusive of interest and costs, the sum or value of ten thousand dollars ($10,000.00).

29.     Venue is properly placed in the United States District Court of the Middle District of Pennsylvania as it is where all parties reside, or have offices and business addresses, and where the illegal events complained of all occurred.

## PARTIES

30.     Plaintiff, **BRIAN S. KEENER,** is an individual, citizen of the United States and resides in the town of Jacobus, in York County, Pennsylvania.

31.     Defendants **TORKAR** and **TAYLOR** are adult individuals, duly appointed and at all times relevant hereto acting as an troopers and officers of the law in the in the Pennsylvania State Police Department, York Barracks.   They are being sued in their individual capacity for money damages.

7

32.     All actions and/or omissions were performed by Defendants **TORKAR** and **TAYLOR** were purportedly in the name of the Pennsylvania State Police Department, and were under the color of state law, although their conduct was outside their authority, outside their jurisdiction, and was ultra vires.

33.     At all times pertinent hereto, Defendants **TORKAR** and **TAYLOR**, each of them acting separately and in concert, acting under color of state law, statute, township ordinances, regulations, policies, practices, customs and/or usages engaged in conduct resulting in serious injury to **Plaintiff**, depriving him of the rights, privileges and immunities secured by the Fourth Amendment and/or Fourteenth Amendment to the Constitution of the United States and the laws of the United States and Commonwealth of Pennsylvania.

34.     Defendants **TORKAR** and **TAYLOR**, acting under color of law, statute, township ordinance, regulations, policies, practices, customs and/or usages have subjected **Plaintiff** and other persons to a pattern of conduct consisting of intimidation, abuse, assault and battery resulting in the denial of the rights privileges and immunities guaranteed **Plaintiff** and other citizens by the Fourth and/or Fourteenth Amendment to the Constitution of the United States and Commonwealth of Pennsylvania.

35.     This systematic pattern of conduct consisted of a number of individual acts of violence, physical harm, intimidation and/or humiliation visited upon **Plaintiff** and other citizens by Defendants, acting alone, together, and/or in concert with persons presently unknown to **Plaintiff** under color of law. These acts of violence, intimidation and/or humiliation which occurred under color of law, have no justification or excuse in law and are illegal, improper and unrelated to any activity in which police officer may appropriately

8

and legally engage in the course of protecting persons or property or ensuring civil order.

<u>COUNT I</u>
<u>PLAINTIFF v. DEFENDANTS</u>
<u>FEDERAL CIVIL RIGHTS VIOLATIONS</u>

**FACTUAL ALLEGATIONS**

36.     On Sunday, August 31, 2008, at approximately 1:30 am, **Plaintiff** was violently attacked inside York Hospital, located at 1001 South George Street, in the City and County of York, by a police officer/corporal, namely, Defendant **TORKAR**, individually and acting in his capacity as Pennsylvania State Trooper Corporal.  At all times relevant to this cause of action, Defendant **TAYLOR** assisted Defendant **TORKAR** in violating **Plaintiff**'s rights, and later engaged in an attempted cover-up of Defendant **TORKAR**'s gross misconduct.   In addition, both Defendants used excessive force on **Plaintiff** after he was arrested.  Further, at all times relevant hereto, the aforementioned **TORKAR** and **TAYLOR** were acting in their capacity as law officers and employees of the Pennsylvania State Police, and were acting under color of state law by virtue thereof.

37.     On or about said date at approximately 1:00am, **Plaintiff**, while operating his vehicle, was pulled over by Defendant **TORKAR** for allegedly making a left turn from South George Street onto East College Avenue in York, Pennsylvania without using turn signals.

38.     Before being pulled over by Defendant **TORKAR** for allegedly making a left turn without a using turn signal**, Plaintiff** was at a bar called Club XS, at 36 West 11th Avenue, in York, Pennsylvania, a known gay bar, where he consumed one (1) beer.  The fact that **Plaintiff** only had one (1) beer prior to his encounter with Defendant **TORKAR** and was not intoxicated was confirmed by the blood alcohol analysis done on **Plaintiff**'s

9

blood at York Hospital**.**

39.    After **Plaintiff** left Club XS, he was followed for several miles by the police cruiser operated by Defendant **TORKAR** before Defendant **TORKAR** pulled **Plaintiff** over for allegedly making a left turn without a using turn signal.

40.    After Defendant **TORKAR** stopped **Plaintiff** for allegedly making a left turn without using turn signals, Defendant **TORKAR** requested **Plaintiff** to perform a field sobriety test, which Plaintiff successfully performed, since he was not intoxicated, although Defendant **TORKAR** claimed that **Plaintiff** failed said field sobriety test.

41.    After Defendant **TORKAR** claimed that **Plaintiff** failed said field sobriety test, Defendant **TORKAR** hand-cuffed Plaintiff outside his vehicle, and arrested **Plaintiff** for driving under the influence of alcohol, despite the fact that **Plaintiff** did not exhibit the indicia of intoxication, and had only consumed one (1) beer at any time relevant to this case.

42.    Defendant **TORKAR** arrested **Plaintiff** and placed him in the back of the police cruiser.

43.    Defendant **TORKAR** took the hand-cuffed **Plaintiff** to York Hospital in order to obtain a blood sample for blood alcohol testing.

44.    During the ride to the hospital, Defendant **TORKAR** and **Plaintiff** had no conversation, although Defendant **TORKAR** has misrepresented that **Plaintiff** stated that if he refused to consent to blood testing, Defendant **TORKAR** wouldn't have proof that **Plaintiff** was "drunk and high."  **Plaintiff** never said that to Defendant **TORKAR** and **Plaintiff** was not "drunk and high" at any time relevant to this matter.  To the contrary, the

analysis done on **Plaintiff**'s blood at York Hospital showed that **Plaintiff** was not intoxicated at any time relevant to this matter**.**

45.    When Defendant **TORKAR** brought **Plaintiff** to York Hospital in order to obtain a blood sample for blood alcohol testing, **Plaintiff** was indecisive about whether to consent to blood testing.

46.    At York Hospital, after changing his mind several times about whether to allow the phlebotomist to take blood for testing, **Plaintiff** refused to allow his blood to be drawn.

47.    Angered at **Plaintiff's** indecision, and/or refusal to submit a blood sample, Defendant **TORKAR** pulled **Plaintiff** from the seat in the phlebotomist's room, clubbed and rehand-cuffed **Plaintiff** and proceeded to club and beat Plaintiff mercilessly, causing the serious injuries discussed herein.

48.    **Plaintiff** was repeatedly struck in the face with a baton by Defendant **TORKAR** before **Plaintiff** was hand-cuffed, and repeatedly punched and kicked by Defendant **TORKAR** after **Plaintiff** was hand-cuffed.  In addition, after **Plaintiff** was hand-cuffed, Defendant **TORKAR** tased **Plaintiff**.

49.    In addition, after **Plaintiff** was hand-cuffed, Defendant **TAYLOR** physically assaulted **Plaintiff**, punched, kicked and tased **Plaintiff**.

50.    The attack upon Plaintiff by Defendant **TORKAR**, and later, Defendant **TAYLOR**, caused great, serious and permanent injuries to **Plaintiff**, as discussed herein.

51.    The use of a taser, including the use of a taser on a hand-cuffed suspect, is considered deadly force along the use of force continuum.   The use of the taser on

11

**Plaintiff** caused plaintiff to defecate in his pants, and he was not allowed to clean up for approximately twelve (12) hours.

52.     Defendants **TORKAR** and **TAYLOR** beat the **Plaintiff** mercilessly, and then entered into a conspiracy to prosecute **Plaintiff** for certain crimes which both Defendants **TORKAR** and **TAYLOR** knew **Plaintiff** did not commit.  Before **Plaintiff**'s arraignment, Defendants taunted **Plaintiff** by threatening to send him to state prison where he would be "fucked."

53.     During the aforesaid beating, and later, Defendant **TORKAR** repeatedly called **Plaintiff** "faggot" and "queer", evincing his evil intent to deprive **Plaintiff** of his civil rights due to Defendant **TORKAR**'s prejudice against and hatred of men he perceives as homosexual.

54.     **Plaintiff** had done nothing to provoke such an attack by Defendant **TORKAR**, and later, Defendant **TAYLOR**.

55.     Said Defendant **TORKAR** beat **Plaintiff** relentlessly and mercilessly, including while he was hand-cuffed, hitting him in the head, mouth, face and body with baton, fist, foot, and taser gun and ramming his head and body into the walking surface, causing wounds, broken bones, broken teeth and/or required dental work, contusions, lacerations and/or bruises to his face and requiring medical attention, and dental work. Said outrageous conduct by Defendants was an egregious and unconstitutional excessive use of force.

56.     By reason of the aforesaid wrongful conduct of the Defendants as hereinbefore alleged, the **Plaintiff** suffered severe and permanent injuries to his body,

including, but not limited to the following: fracture of the medial wall of the left orbit, non-displaced fracture of the floor of the left orbit fracture of the frontal processes of the bilateral maxillary bones, non-displaced fracture of the medial wall of the left maxillary sinus, air fluid level within left maxillary sinus, mucosal thickening and/or hemorrhage in bilateral ethmoid sinuses, mucosal thickening obstructing right maxillary sinus ostium, nasal septal deviation, left eye proptosis, left eyelid ecchymosis, lacerated left eyebrow, significant subconjunctival hemorrhage to the left eye, possible post-traumatic glaucoma to the left eye, low intraocular pressure in the left eye, facial trauma, extensive left-sided facial soft tissue swelling and bruising, stranding of left intraorbital and retroconal fat consistent with severe contusion, rib contusions, neck pain and damage, low back pain and injury, sciatic nerve pain and injury, TMJ pain and disorder, hernia, tinnitus, damage to teeth requiring root canals, post-traumatic stress disorder, nervous shock and aggravation and/or exacerbation of all known and unknown preexisting medical conditions. **Plaintiff** suffered internal injuries of an unknown nature; he suffered severe aches pains, mental anxiety and anguish, and a severe shock to his entire nervous system, and other injuries the full extent of which may not yet be known.  He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual duties and occupation, all to his great financial detriment and loss.  **Plaintiff** believes and therefore avers that his injuries are serious and permanent in nature.

     57.    Said Defendants intentionally inflicted said serious injuries upon **Plaintiff**, and said Defendants intentionally entered into a conspiracy to deprive **Plaintiff** of his civil rights

and also to falsify charges against **Plaintiff** in a malicious attempt to cover up and/or justify the gross violation of **Plaintiff**'s civil rights.

58.     Although **Plaintiff** was beaten for refusing to allow testing of his blood, his blood was taken at York Hospital after he was mercilessly beaten, and the results of his blood test showed that he was not intoxicated.

59.     By this complaint, **Plaintiff** seeks judicial redress for violation of his civil rights, due to the egregious, outrageous and unconstitutional use of excessive force by Defendants.

60.     As a result of the aforesaid occurrence, the **Plaintiff** has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and will or may be required to expend additional sums for the same purposes in the future.

61.     As a result of the aforesaid occurrence, the **Plaintiff** has been compelled, in order to defend himself against the outrageous charges, to expend vast sums of money on attorneys fees and costs, draining his savings.

62.     As a result of the aforesaid occurrence, the **Plaintiff** has been prevented from attending to his usual employment and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great financial detriment and loss.

63.     As a result of the aforesaid occurrence, the **Plaintiff** has suffered physical pain, mental anguish embarrassment, humiliation, psychological pain and damage to his personal and business reputation, and he may continue to suffer same for an indefinite period of time in the future.

14

64.    Although **Plaintiff** was beaten for refusing to allow testing of his blood, his blood was taken at York Hospital after he was mercilessly beaten, and the results of his blood test showed that he was not intoxicated.

**WHEREFORE**, **PLAINTIFF BRIAN S. KEENER** demands compensatory damages against the Defendants and each of them, jointly and severally, in an amount in excess of One Hundred Thousand ($100,000.00) and further demands punitive damages against the Defendants, and each of them, jointly and severally, in an amount in excess of ($100,000.00).  A demand is also made for costs, expenses, reasonable attorney fees and such other relief as the Court deems just, proper and equitable. **Plaintiff** demands a trial by jury.

<u>COUNT II</u>
<u>PLAINTIFF v. DEFENDANTS</u>
<u>FEDERAL CIVIL RIGHTS VIOLATIONS-DEMAND FOR PUNITIVE</u>
<u>AND OTHER DAMAGES</u>

65.    **Plaintiff** incorporates herein by reference all of the allegations contained in paragraphs 1 through 64, inclusive, as fully as though the same were set forth herein at length.

66.    As a direct and proximate result of the above mentioned acts of the Defendants, **Plaintiff** has been caused to suffer great bodily and mental harm, pain, suffering and injury, including mental anguish, from the time of the incident until now, and will continue to suffer same well into the future; has lost and will in the future lose sums of money due to medical expenses past, present and future; has lost wages, and earnings by reason of having been greatly humiliated and held up to public scorn and ridicule as a

result of the acts of the Defendants discussed herein.

67.    **Plaintiff** has been forced to incur obligations for investigation, attorney fees, court reporter fees and other expenses due to the outrageous, intentional, unfounded and unwarranted misconduct of the Defendants, which has been a serious and onerous burden to **Plaintiff**.

68.    Due  to the intentional, egregious and outrageous nature of the misconduct of Defendants as outlined above, together with the fact that Defendants' misconduct was will malice and ill will, **Plaintiff** demands not only compensatory damages, but punitive damages.

**WHEREFORE**, **PLAINTIFF BRIAN S. KEENER** demands compensatory damages against the Defendants and each of them, jointly and severally, in an amount in excess of One Hundred Thousand ($100,000.00) and further demands punitive damages against the Defendants, and each of them, jointly and severally, in an amount in excess of ($100,000.00).  A demand is also made for costs, expenses, reasonable attorney fees and such other relief as the Court deems just, proper and equitable. **Plaintiff** demands a trial by jury.

**COUNT III**
**PLAINTIFF v. DEFENDANTS**
**SUPPLEMENTAL STATE CLAIMS**

69.    **Plaintiff** incorporates herein by reference all of the allegations contained in paragraphs 1 through 68, inclusive, as fully as though the same were set forth herein at length.

70.    The wrongful acts and conduct of the individual Defendants in this case

constitute assault, battery, and intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania, and this Honorable Court has supplemental jurisdiction to hear and adjudicate these claims.

71.    The acts and conduct of the individual Defendants in this case further acting in concert and conspiracy to commit and/or cover up acts constituting assault, battery, and intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania, and this Honorable Court has supplemental jurisdiction to hear and adjudicate these conspiracy claims.

**WHEREFORE**, **PLAINTIFF BRIAN S. KEENER** demands compensatory damages against the Defendants and each of them, jointly and severally, in an amount in excess of One Hundred Thousand ($100,000.00) and further demands punitive damages against the Defendants, and each of them, jointly and severally, in an amount in excess of ($100,000.00).  A demand is also made for costs, expenses, reasonable attorney fees and such other relief as the Court deems just, proper and equitable. **Plaintiff** demands a trial by jury.

**JEFFREY R. LESSIN & ASSOCIATES, P.C.**


**BY**    *Jeffrey R. Lessin*
**JEFFREY R. LESSIN, ESQUIRE**
**MARK T. RICHTER, ESQUIRE**
**I.D. Nos. 43801 and 45195**
**Attorneys for Plaintiff**
**1500 J.F.K. Boulevard, Suite 600**
**Philadelphia, PA 19102**
**215-599-1400**

17